UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN CAVINESS,

       Plaintiff,                          Hon. Janet T. Neff

v.                                          Case No. 1:20-cv-292

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 21 years old on his alleged disability onset date. (ECF No. 8-10, PageID.634). Plaintiff successfully completed high school and worked previously as a combat rifleman crewmember. (ECF No. 8-4, PageID.248). Plaintiff applied for benefits on August 6, 2014, alleging that he had been disabled

since April 1, 2007, due to PTSD, depression, back injury, and tinnitus. (ECF No. 8-10, 8-12, PageID.634-40, 672).

The Commissioner denied Plaintiff's application a decision which Plaintiff appealed to the United States District Court for the Northern District of Indiana. (ECF No. 8-6, PageID.316-52). On March 31, 2017, the court reversed the Commissioner's decision and remanded the matter for further administrative action. (*Id.*, PageID.353-75). Following two administrative hearings, the Administrative Law Judge (ALJ), in an opinion dated February 27, 2019, determined that Plaintiff did not qualify for disability benefits. (ECF No. 8-4, 16-1, PageID.223-50, 257-99, 1354-1417). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (ECF No. 8-4, PageID.214-18). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2012. (ECF No. 8-4, PageID.226); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff, through his date last insured, suffered from: (1) lumbar spine degenerative disc disease; (2) obesity; (3) depression; and (4) post-traumatic stress disorder (PTSD), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the

requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 8-4, PageID.226-28).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through Plaintiff's date last insured, Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds; (2) he could occasionally balance, stoop, kneel, crouch, and crawl; (3) he must avoid concentrated exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, poor ventilation, dangerous moving machinery, unprotected heights, and wet, slipper, or uneven surfaces; (4) he could occasionally push/pull and operate foot controls, bilaterally; (5) he could remember and follow simple, but not detailed, instructions; (6) he could perform assigned tasks, but not always at a production rate pace, however, he could have met the end of the day work goals; (7) he could have occasional contact with co-workers, supervisors, and the general public; and (8) he could occasionally adapt to rapid changes in the workplace. (*Id.*, PageID.228).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 107,100 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (*Id.*, PageID.249). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. The ALJ's RFC is Supported by Substantial Evidence

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ concluded that Plaintiff, as of the date his insured status expired, could perform a limited range of sedentary work. Plaintiff argues that the ALJ failed to sufficiently account for his mental limitations. The Court is not persuaded.

With respect to Plaintiff's emotional impairments, the ALJ found that Plaintiff, as of the date his insured status expired, experienced moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. (*Id.*, PageID.227-28). As noted above, the ALJ limited Plaintiff to the performance of simple work performed at less than a production rate pace in an environment only occasionally subject to rapid changes. The ALJ further limited Plaintiff to only occasional contact with co-workers, supervisors, and the public.

Treatment notes dated September 2, 2009, indicate that Plaintiff was attending school full-time and expected to graduate "shortly." (ECF No. 8-16, PageID.974). Plaintiff denied experiencing depression, anxiety, or agitation. (*Id.*, PageID.975). The examination revealed that Plaintiff was alert and oriented with "normal" judgment and insight with "no depression, anxiety or agitation." (*Id.*).

On September 23, 2009, Plaintiff participated in a Post Traumatic Stress Disorder Screening. (ECF No. 8-15, PageID.823-26). When asked "about exposure to any traumatic incidents while in the Army," Plaintiff "was not able to provide any details about any specific military-related incidents that were distressing to him with the exception of an incident that occurred when he was out drinking with a friend in Germany." (*Id.*, PageID.823). Plaintiff reported that his military experience was "good overall," and that, while he was exposed to "some disturbing things. . .that stuff doesn't bother [him]." (*Id.*, PageID.824). The results of the

-7-

examination were unremarkable and the psychologist concluded that Plaintiff "did not report any symptoms consistent with PTSD." (*Id.*, PageID.823-26).

On November 23, 2009, Plaintiff reported that he was "not too bad," but noted that his "regular" marijuana use bothered his wife "significantly" and was contributing to their marital issues. (ECF No. 8-16, PageID.966-67). The results of a mental status examination were unremarkable. (*Id.*). Counseling treatment notes dated January 13, 2010, indicate that Plaintiff and his wife were continuing to experience difficulties. (*Id.*, PageID.960). Plaintiff reported that he continued to regularly use marijuana and was still attending college. (*Id.*). The results of a mental status examination were unremarkable. (*Id.*).

Counseling treatment notes dated March 10, 2010, indicate that Plaintiff's primary difficulty was the "up and down" relationship with his wife. (*Id.*, PageID.958-59). The psychologist observed that Plaintiff maintained "appropriate" eye contact, exhibited "clear and directed" speech, "logical and sequential" thought processes, and "good" insight and judgment. (*Id.*, PageID.959). Treatment notes dated April 21, 2010, reveal similar findings. (*Id.*, PageID.952-54). Treatment notes dated October 13, 2010, indicate that Plaintiff continued to attend college full-time. (*Id.*, PageID.943). The examiner noted that Plaintiff was "alert and oriented," with "normal" judgement and insight, and "no depression, anxiety or agitation." (*Id.*, PageID.944).

In October 2011, Plaintiff expressed a desire to participate in therapy and/or counseling, but failed to schedule a follow-up appointment or respond to subsequent attempts by the Veterans Administration to contact him. (ECF No. 8-15, PageID.809-10). In October 2012, Plaintiff denied experiencing depression or loss of interest in activities. (*Id.*, PageID.806-07). Plaintiff instead reported that he had recently obtained a divorce and was "more involved with art, archery[, and] hunting." (*Id.*).

On June 18, 2013, Plaintiff participated in a psychiatric evaluation. (*Id.*, PageID.872-76). Plaintiff reported that he experienced a "perfect childhood" in an "intact family" and "that all of his problems are due to his military service as he did not have problems before the military." (*Id.*, PageID.874-75). The psychologist noted that Plaintiff had "no combat deployments," but instead served on a team that escorted injured soldiers from Iraq to Germany. (*Id.*, PageID.874). The psychologist observed that Plaintiff was "alert and oriented" with "coherent" speech and "good" eye contact. (*Id.*, PageID.874). Plaintiff exhibited "poor" judgment and insight, but his thought processes were "logical and sequential." (*Id.*). The psychologist also noted that Plaintiff "seems unable to tolerate anything he perceives as criticism and is quite self-aggrandizing." (*Id.*). Plaintiff was diagnosed with anxiety disorder, depressive disorder, and personality disorder. (*Id.*, PageID.875). Plaintiff's GAF score was reported as 67.[1] (*Id.*).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric

During an August 8, 2013, examination, Plaintiff reported that, while in the Army, he had to go on "hot missions" and "shoot other people." (*Id.*, PageID.861). Plaintiff reported that he continues to experience panic attacks and "sees dead babies." (*Id.*). Plaintiff exhibited "noticeable sadness" and was "frustrated by his inability to manage relationships." (*Id.*, PageID.863). Plaintiff was diagnosed with depression and anxiety and his GAF score was reported as 65. (*Id.*). Treatment notes dated August 5, 2014, indicate that Plaintiff "seemed to exaggerate" his PTSD symptoms and "does not seem to be genuine in his reporting." (ECF No. 8-17, PageID.1080-81). An assessment of Plaintiff's mental status was otherwise unremarkable. (*Id.*, PageID.1081). Plaintiff reported that his back pain "affects every aspect of [his] life." (*Id.*, PageID.1080). The following week, Plaintiff's narcotic pain medications were suspended after Plaintiff tested positive for marijuana. (*Id.*, PageID.1070).

On October 20, 2017, Plaintiff was examined by Psychologist Anne Kantor. (ECF No. 8-21, PageID.1276-83). Plaintiff reported that he was "disabled in a myriad of ways." *(Id.*, PageID.1276). Plaintiff reported that he had "nerve damage," suffered back pain so severe that he has to wear a back brace "24 hours a day pretty much," and experienced memory loss and "constant panic attacks." (*Id.*).

---

Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 67 indicates that the person is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 32.

Plaintiff reported that his physical pain caused him to "limp. . . all the time." (*Id.*, PageID.1279). Kantor, however, observed Plaintiff ambulate at a "normal pace" with "no visible limp." (*Id.*). The results of a mental status examination were unremarkable and Kantor observed that Plaintiff "may be attempting to exaggerate his symptoms." (*Id.*, PageID.1279-82).

On January 14, 2018, Psychiatrist Dr. Rita Clark completed a report regarding Plaintiff's ability to perform mental work-related activities. (*Id.*, PageID.1301-03). Dr. Clark reported that Plaintiff experienced no limitations in his ability to understand, remember, and carry-out simple instructions. (*Id.*, PageID.1301). The doctor reported that Plaintiff experienced: (1) mild limitations in his ability to interact appropriately with the public; moderate limitations in his ability to interact appropriately with co-workers and supervisors; and (3) marked limitations in his ability to respond appropriately to usual work situations and changes in routine. (*Id.*, PageID.1302). Based upon her review of Plaintiff's treatment record, Dr. Clark reported that Plaintiff had been suffering from this degree of limitation since 2014. (*Id.*).

The evidence prior to the expiration of Plaintiff's insured status reveals that he was not experiencing symptoms inconsistent with the ALJ's RFC assessment. Moreover, Plaintiff's then current care providers did not impose on Plaintiff limitations that are inconsistent with the ALJ's RFC assessment. While Plaintiff's condition appears to have subsequently deteriorated, the record does not support a finding that such occurred prior to the expiration of Plaintiff's insured status. In

fact, Dr. Clark, on whose opinion Plaintiff places such significance, specifically found that the limitations she identified were first present in 2014, at least one year after the expiration of Plaintiff's insured status.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

**II.     The ALJ's Step Five Finding is Supported by Substantial Evidence**

As noted above, the ALJ found, based upon the testimony of a vocational expert, that there existed more than 100,000 jobs which Plaintiff could have performed consistent with his RFC. Specifically, the ALJ identified the following jobs: (1) order clerk (17,000); (2) charge account clerk (24,000); (3) call-out operator (33,000); (4) addresser (6,100); and (5) surveillance system monitor (27,000). (ECF No. 8-4, PageID.249). One of the limitations articulated in Plaintiff's RFC was that

Plaintiff, as of the date his insured status expired, could have only occasional contact with the general public.

With respect to this particular limitation, the vocational expert observed a distinction between (a) in-person contact only and (b) in-person and telephone contact. Specifically, the vocational expert testified that if Plaintiff's ability to interact with the public was limited vis-à-vis in-person contact only, he could perform the jobs identified above. (ECF No. 16-1, PageID.1406-08). But, if Plaintiff was limited to only occasional public contact both in-person and on the telephone, he would not be able to perform the order clerk, charge account clerk, and call-out operator jobs identified above. (*Id.*).

In her opinion, the ALJ limited Plaintiff to only occasional contact with the public, but did not specifically indicate whether this restriction was limited to in-person contact only or also encompassed telephone contact as well. (ECF No. 8-4, PageID.228). Plaintiff argues that it constituted reversible error for the ALJ to conclude that he could have performed the order clerk, charge account clerk, and call-out operator positions she identified. The Court disagrees for two reasons.

First, the ALJ clearly indicated at the administrative hearing that the limitation in question encompassed in-person contact with the public only. (ECF No. 16-1, PageID.1407). Second, even if the Court assumes that the ALJ improperly included the order clerk, charge account clerk, and call-out operator positions in her opinion, the addresser (6,100); and surveillance system monitor (27,000) jobs still

remain in numbers which far exceed the significant number threshold. Accordingly, the Court rejects this argument.

### III. The ALJ Did Not Fail to Comply with the District Court's Order

As noted above, the Commissioner's initial decision was reversed following an appeal to the United States District Court for the Northern District of Indiana. Plaintiff argues that he is entitled to relief because ALJ Whetsel failed to comply with the District Court's Order. The Court is not persuaded.

In his opinion remanding this matter, the Honorable Jon DeGuilio faulted the original ALJ for failing to consider the medical evidence dated after the expiration of Plaintiff's insured status. (ECF No. 8-6, PageID.364). The Court also found it "problematic" that the ALJ did not consult a "medical professional" before rendering his decision. (*Id.*, PageID.365). Judge DeGuilio, therefore, remanded this mater "for further evaluation of [Plaintiff's] RFC. . ." (*Id.*, PageID.365). The Court did not order the Commissioner to undertake any specific action on remand, but instead merely stated that "the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion." (*Id.*, PageID.366).

ALJ Whetsel obtained a consultive examination conducted by Psychologist Anne Kantor, as noted above. (ECF No. 8-21, PageID.1276-83). The ALJ also consulted a psychiatrist, Dr. Rita Clark, who testified at an administrative hearing and provided a written assessment of Plaintiff's functional limitations as also noted above. (ECF No. 8-4, 8-21, PageID.260-75, 1301-09). Finally, ALJ Whetsel

considered, and discussed in detail, the medical evidence subsequent to the expiration of Plaintiff's insured status. (ECF No. 8-4, PageID.223-50). In sum, ALJ Whetsel complied with Judge DeGuilio's remand order. This argument is, therefore, rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 22, 2021                    /s/ Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge